Okay, let's see. Our next case for argument is Singh v. Garland. It's morning. Your Honor, if may please the court. I'm Thomas Masucci, representing Mr. Indinderpal Singh. Your Honor, my initial focus will be on the agency's denial of Mr. Singh's past One, that the harm he suffered in India was insufficiently severe to constitute persecution. And secondly, that he failed to show that authorities were unwilling or unable to protect him from persecution. This court, and throughout many of its decisions that have dealt with the have pointed to the inquiry in the following way. First, it's been acknowledged that this is a inherently very fact specific effort. As the court said in Sharma, determining whether the facts compel a conclusion of past persecution is ultimately a fact bound endeavor that is not reducible to a set formula. Secondly, this court has defined this inquiry as multi-factor, that is acknowledging although each case turns on its own facts, there are a number of factors that seem to recur that would require consideration. And finally, I would guess that the label that I would attach to the third characteristic would be holistic, that is that the factors have to be considered in combination with each other. On all of these counts, I think the agency's handling of the past harm that Mr. Singh... What was the harm? Well, we can start with the two instances of physical assault, which did require medical attention. Well, medical attention is a wide range. You can be in the hospital for a month, so you can have a bandaid. What was it here? It was... He was being treated as an outpatient for contusions. There were no broken limbs. No missing teeth, anything like that. And the IJ specifically commented that the petitioner's testimony was, quote, rather vague with what specifically was wrong with him, close quote. Can you point to anything in the record that gives us more help as to what the injuries were? Well, certainly the medical report that is in the record, it talks about the administering of IV and saline solutions and so on. I will agree that in his testimony and also in his written statement, Mr. Singh was not detailed or articulate or expert in describing what kind of medical treatment he got. But it certainly was... He needed some medical attention. Well, is there any authority that supports that as the standard for persecution? Standing by itself? Well, that's all you're offering me so far. So, yeah, standing by itself, unless you can point to some authority that supports the vague description that he offered is sufficient. Well, but again, Your Honor, we're not limited to looking at the instances of physical harm. I mean... Well, I mean, we're talking past persecution. And so he's talked about those two episodes where he appeared to have been roughed up some, but isn't very clear as to exactly what roughing up resulted in. And then what else? And what authority supports the proposition that the agency was compelled to conclusion that that amounted to past persecution? Well, Your Honor, in addition to the two instances of roughing up, there were two credible death threats. There was the fact, and again, I'm looking at the factors that are kind of outlined in Sharma, there is the fact that it was not a single isolated incident, it was two incidents. There was, I mentioned the threats. Another factor that's noted in Sharma, a recurring factor, is that when harms have fallen in the petitioner's family. And this record shows that the petitioner's father was harmed both prior to the problems that he had and also subsequent to the problems that he had. Where does the father continue to live? He continues to live in India, but he's no longer politically active. He's elderly and doesn't have any issues right now. The issues that befell Mr. Singh have less to do with his being a Sikh and more to do with his being a politically active Sikh. And the background information, which the judge makes passing reference to, but that doesn't really look at carefully, is the continued pattern of Sikh marginalization, I guess is the best way to describe it, or the Sikhs being, as Dr. Mahmood said in her affidavit, that sort of they were having like a non-identity almost. They're an other in the eyes of the rest of Indian society. Well, it's certainly not the law. We've had lots of cases involving Sikhs. It's not the law that somebody who is a Sikh has air fortiori suffered from past persecution or has a well-founded fear of future persecution. Those cases don't always succeed. So telling me that as a Sikh, yeah, that's certainly part of the puzzle. But what do you have in the way of documented injury or other things that support the proposition? And what law do you have that supports the proposition that the agency was compelled to pursue persecution or has a well-founded fear of future persecution? I mean, I'm not hearing a lot of specifics. Well, in addition to the physical harm that he experienced in India, which again was the focus of the IJ, really didn't look at anything else. Well, and you haven't told me why the IJ wasn't right in describing that testimony as vague. And if you want to go to the next part. The IJ says he was pretty vague as to what it was he told the police, too. Well, you know, he may have been vague in recounting it, but what the IJ fails to mention is that the police, and he testified to this credibly, that the police basically told him that, you know, we don't want to listen to you. The police basically shooed him away. Well, if he didn't tell them any specifics as to who he was attacked by or what had happened to him, what's the police department supposed to do? I mean, if you come in and say, I got beat up by who? I don't know. For why? I don't know. That doesn't tell me that the police aren't willing to do something, that they have something to go on. But it doesn't tell me they have something to go on. And can you point to something that tells us the police did have something to go on and disregarded it because they weren't interested in helping your client? Well, my client did mention that this attack, one of the attacks took place after his attending a political rally, his returning from a political rally. Does that help them to figure out who performed the attack? Not precisely. These were vigilantes and vigilantes don't usually walk around with badges or name tags on. And I think Mr. Singh was very honest. You know, I couldn't give you a name because I didn't know who they were. You know, but again, these were people that were clearly... What do you propose the police had to do in response? Well, frankly, I would have said to the complainant and his father, look, and in one instance, he did show them some of his injuries. We need more information, you know, this this kind of thing happens. And yet, you know, you haven't given us enough information. But it really seemed like the police weren't interested. What I'm struggling with is just what are the facts in the record here that compel the conclusion that the police were not willing to control the attackers? I mean, I guess I take your arguments that they kind of shoot them away. But does that alone compel the conclusion you want us to reach? Well, if this, Your Honor, if this situation is not a one off and if this bespeaks something more structural, then I think we are looking at an inability or an unwillingness. And again, looking at the it's actually in the record, there is an article by Dr. Mahmood and a co-author. And I'm looking now at starting at page 506 of the administrative record and specifically Section 10, which talks about the role of political parties and persecution. It mentions that, you know, since the kind of the dying down of the more violent separatist movement in the Punjab, that. Counterinsurgency efforts, I'm reporting from page 520, counterinsurgency efforts by police and security personnel in Punjab have been increasingly complemented by vigilante efforts on the part of anti Sikh political parties, and these parties function as an extension of the long arm of the police, sometimes beating and threatening individuals themselves. And that didn't happen in this case. But this describes a kind of a structural indifference to Sikhs, to politically active Sikhs. And in that sense, if you just look at the facts as they unfolded in front of Mr. Singh, the police were based upon the information that he had, which again, is not something it was not a one off. This is this is apparently a recurring phenomenon of Sikhs, politically active Sikhs being attacked, being targeted that the police were not able to or they were not able to and they were not willing to do anything. They weren't willing to to ask any follow up questions, it seems they basically told them to be quiet. And then they then they called him a liar. Did you want to save some time for rebuttal? Counselor, do you want to save some time for rebuttal? Yes, thank you. OK, thank you. Let's hear from the government. May it please the court, my name is Alana Jung and I'm here on behalf of the Attorney General. In this immigration court, in this immigration case. Sometimes we feel like we're in immigration court, you know, like the BIA, you know, we just constantly have these cases. Yes, Your Honor. In this case, the board and the immigration judge denied Mr. Singh's application for asylum, withholding of removal and protection under the Convention Against Torture. Before this court, Mr. Singh has not identified evidence to compel a reversal of the agency's determination that he did not pass or future persecution to be to be eligible for relief. I'd like to go and address the points that counsel raised, if unless the court has specific things that you would like me to go into. Well, we can start with past. We can start with past persecution, which is what counsel started with. Yes. Past persecution. Yes, Your Honor. In this case, Mr. Singh has not compelled a reversal of the agency's past persecution determination. The agency determined that he provided examined the cumulative effect of the harm that Mr. Singh that Mr. Singh alleged that he suffered and engaged in the very fact specific inquiry as Mr. as provided in Sharma and determined that Mr. Singh did not meet his burden of proof to show that the severity of the harm rose to the level of the incidences. He provided vague testimony. Well, he said I thought he said, you know, with respect to the first one that he was he was putting up posters and they he was confronted or maybe I'm getting the incidents confused. But I thought it was the first one. He was putting up posters and he was confronted by the by members of the Congress Party who told him to take him down, pulled him down, knocked. He was knocked down and then they kicked him while he was on the ground. Yes, Your Honor. Is that right? He they kicked him and they kicked him and he testified that he suffered contusion, contusions. That is what's vague about that. It is vague because. Mr. Singh does not testify to the extent of the physical. Well, but so he so then he was he testified clearly that he was kicked. Yes, he was on the ground and that he testified that he was kicked, but he didn't testify to the extent of how serious the injuries were. The extent of the physical harm. There was no other detail provided to the court. And the immigration judge continuously, continuously asked him for detail. What did you what did you experience? What did you suffer? And he wasn't able to provide the detail. And that. That that is the that was the point of the agency's decision is that he wasn't he was vague in his testimony of what happened. Was there a threat at that time? That time there was no threat. There was death to the man party chatted, chanted. It wasn't actually your honor. His testimony was death to the man party chant was chanted. But in his statement, he did provide that there was in his statement. He did provide that he was threatened that there is. And then, yes. Right. So the second incident in the second incident takes place later, correct? Yes. The second incident took place later. He was returning from a rally and he was threatened to leave the man party. He was hit with batons and kicked. And again, he indicated that he suffered contusions as well as a cut to the hand. But then when asked, well, what other what was the extent of your injury? What was the serious of the injury? He testified he testified that he suffered a cut contusions. And the extent of his treatment was the extent of his treatment was glucose and IV. He also testified that he. Yes, your honor, that's that. Now on that one, he was also threatened. Is that right? Specifically, he was threatened to leave the man party or else leave the man party or else be killed. But then. Because this is a fact, because this is a fact, intensive inquiry, death threats, this court has recognized that death threats may constitute persecution, but we have to consider the surrounding events of those threats. And that includes whether they're sufficient, sufficiently menacing to cause actual harm and suffering. He hasn't shown that these death threats considered in the cumulatively with the two incidences. Well, does he have to wait until they actually carry out the threat? As part of those, as part of the circumstances, as part of the surrounding events, if he shows that the petitioners, excuse me, that the Congressmen party member would carry out their threats or were immediate such that to bring the threats to the level of sufficiently menacing and severe to cause actual harm and suffering, then that's a different scenario than what we have here. And your honor, I'd like to point you to the court's decision in Singh in in 2002, in 2000. We have lots of things. Yeah, we have one. I was just going to call your attention to the most recent Singh case, which is decided in 2022. Yes, I will. I would also like to call your honor's attention to in that to that same case, because I do think it provides a good analysis of what's happening in this same case and how this same case does not fall falls below that threshold. In that same case, petitioners specifically testified to what he had experienced and not only to the two incidences that he had experienced, but also the experiences that his brother had had experience and that his first experience with the Congress party in that case was because those those Congress party members approached him and asked him where his brother was. So those Congress party members knew his identity and they were targeting him and his brother at repeatedly as this court. And they were constant threats of violence to this, that petitioner over a span of two years. There was also the fact of that case of it was the petitioner was between the ages of 16 and 18, which through the child lens increases the as another factor that the agency can consider to determine whether the severity rises to the level of persecution. In this case, we do not have those factors. We have vague statements from the petitioner. What happens to I'd like to know that what happened to Mr. Singh's father? Under this court, it has to be that persecution cannot substitute for Mr. Singh, as this as this court has found in other cases, he can't substitute for the person. Well, let me ask you this. It may not be. You may not be able to sing, may not be able to substitute that. But isn't that factored in? It has to be directed at Mr. Singh, does it factor in for past persecution or for well-founded fear of future persecution? It surely factors into the second. It does for the severity. It does factor in if Mr. Singh is able to establish that his father's harm was as a means or was directed at him. Well, it doesn't it doesn't hear it also factor into this this issue, which which I want to get to of the willingness or unwillingness to to control, because, you know, here we have the the the fact that the, you know, police are involved in the attack on Singh's father. And this thing is, you know, is saying that the police told him that he was a liar and wouldn't even take his report. So what are we to make of what are we to make of that? Your Honor, there are nuances between the situation between Mr. Singh and his father. The first the first nuance that I'd like the court to consider is the immigration judges finding that Mr. Singh's father, as Mr. Singh testified, was at the forefront of the man party. He was an active man. He was an active member, the member who organized and worked at these rallies. He also, in Mr. Singh's words, successfully recruited members. On the other hand, Mr. Singh testified that he was a worker for the party, that he attended rallies and he put up poster before them, before the before the board and for this court. Mr. Mr. Singh has not challenged that distinction, not has not has not challenged that factual finding that the immigration judge has made. With that distinction in mind, what happened to Mr. Singh's father in 2011 was related to the police. It's whether it's was at the hands of the Congress Party. The record is unclear. And then 2006 incident was he was coming back from a rally and the police and Congress Party members came to his house and attacked him and excuse me, arrested him and then took him to the station. Right. But doesn't the involvement of the police in these incidents with Singh's father shed some light on the question of whether the police were going to be willing to help to help Singh? I mean, I understand you're saying they're in different positions and in in their party. But, you know, Singh's testimony was it was again, they wouldn't even take his complaints. It's and that nuance is important, Your Honor, because Mr. Singh, he didn't identify to the police that the Congress Party members were the ones who attacked him during the first or the second incident. The IJ kept on, especially if you look at the record between like between excuse me, between 180, 182 and 184 of Mr. Singh's testimony. There is the IJ attempting to talk to attempting to ask Mr. Singh questions about what did you tell the police? What happened? And there's no indication that he told the police I was attacked by Congress Party members. He said he attended a rally and he showed them his injuries, but he didn't say that the Congress Party members were the ones who attacked me. And so to say that the police took to. The record does not would not support Mr. Singh's testimony that. The police were unwilling or unable to help him because. It was related to the Congress Party, or it was because he was a member of the Congress Party. He hasn't pointed to evidence to. Compel that conclusion. Can I just to follow up on this unable and unwilling point? When I read the transcript, I had a kind of a different understanding of the transcript. Maybe I'm maybe I'm misreading it, but the IJ focused on the word. He all he said was it happened to me. Something he used the word hap. He took the word happened and sort of emphasized that. And that comes from the hearing from Mr. Singh's testimony at the hearing on. Let's see. This is always confusing to me, but it's the excerpts of record. I think it's page 184 or it's page 34 of the transcript of the hearing. Yes. And he said the IJ says at line 19 to Mr. Singh, what did you tell them, meaning the police told them that told them that yesterday this this happened with me. And then as I understand, as I read that, I had to read that several times. But he's talking about told them that yesterday, meaning he's told the police. As I read it, what he's talking about is outlined up above in his testimony, if you go to the prior page, page 30. Is it page 33? Yeah, I guess it is. And back a little ways. So it's like he told he related what happened to him during his testimony. And then when the IJ acting that asked him that question, he said, I told him I told them. I told them that yesterday. So he did relate to the police, as I read that, he did relate to the police what happened to him. He am I misreading that? Your Honor, I disagree with the way that the court is reading. OK, well, tell me why I do, because when the IJ, the course of the hearing, the IJ, when this exchange was occurring, the IJ proceeded to ask him specifically, what did you tell? What did you tell the police? What happened? But even though the IJ asked that several times, he kept on saying, like yesterday, I told the police this happened. He didn't provide any more detail with that. And that's the problem. And that's why the immigration judge was unable, did not find that Mr. Singh was able to meet his burden of proof, is because he wasn't able to provide what he specifically told the police. And that was the that's what the immigration judge was looking for. And even asking, clarifying, clarifying question on 184 and 185, Mr. Singh didn't provide that. But he said, you know, his counsel was his counsel was questioning him. And he said, I'm just taking it for an example on page. Page thirty four, I guess, up above. Mr. Boudard and Mr. Singh, this time, did you report this matter to the police? Yes, I did try. Did you try hard? Yes, because my father and I went, but they wouldn't listen. And then if you go back further. Mr. Boudard and Mr. Singh, what do you think they did? Let's see. What did you think they did? Let's see, where is it? Anyway, he did. Let's see. He says, well, if you go to page thirty two. When he asked him if he went to the police. When he says he went to the. To the police station in Dillon, was that right? Yes. Is that near where you live? For my village, it's about two to three kilometers. So what happened in the police station? Did they listen? They did not listen to us at all. And sent us back saying you are lying. What do you think they what did you think? Why didn't they write down that report? Because Congress is a strong party and they were working under under them. So probably they didn't want to write down against them. All right. But did you tell them? But they can't read this. All right. But they didn't tell you that, right? No. So besides this incident, anything else happened to you in your in your country? I mean, sort of related. I don't know, I just kind of read the whole thing. And your honor, that ambiguity. Because of the ambiguity in the in the transcript, the government asset, this court looked to the position of the immigration judge as the fact finder. He was there in court and he listened to the testimony and he was able within his discretion to afford the weight that he was permitted to. So you have to go back even further. I didn't go back far enough, but he does relate what happened. On April 20th. 2013. And then he says, I told them that. Or this yesterday. I don't know. Anyway. Unless the court has any more questions, we rest on our brief. Okay. Thank you, counsel. You had a minute left. Minute and a half. Thank you, your honor. Yes. Two very quick things. First, there was actually a specific death threat made during the first incident. The the transcript reads this is between 177 and 178 in the record. Right. Man party death to the man party and told us. To leave this, leave this party or you won't be alive. So there was a specific death threat regarding the the judge. The IJ made a point of pointing out that this was a this is speculation on Mr. Singh's part, that the reason the police didn't take any action was because they were in cahoots with the Congress Party. And you're right. They didn't say that. But then again, it's it seems as if the judge was almost making a kind of a subsidiary argument around nexus or an analogous argument around nexus where the you know, I've seen some judges where the you know, the the attackers don't explicitly say why they're attacking the person. And there's there's no way to figure out what the you know, whether whether the motivation is one that's protected under the act. And and here I hear the comment is pertaining to the police's reaction. I mean, there's not a question that I understand an argument being made that there isn't a nexus to his activity for the Mann Party or the attack by the Mann Party's political opponents. The question is, is there something for the police to act upon? There definitely is not an issue of necessary. I agree, your honor. I think there there there is enough for the police to act on if if they really wanted to act on it. And what would you propose they do? What do you think they were compelled to do? Well, maybe to begin to sit down with them and start asking them some questions rather than just shooing them out of the office and calling them liars. Well, he said he couldn't identify the attackers. So the question is, you're trying to point to the failure of the police to do something as demonstration that they were unable or unwilling. And it seems to me that's a big jump, given that most crimes in this country, in your city, in San Francisco, don't actually get cleared. When somebody says, I was roughed up, but I can't tell you who did it. The fact that the police don't take action afterwards is proof of what? I guess it depends on the context. But in this case, given the. The repetitive nature, the structural nature of political attacks against politically active Sikhs. Either the problem is so pervasive that the police really are just unable to do anything about it, that the things have just gotten that out of control for this particular reason. It's not just a question of lawlessness or, you know, civil unrest. Or as they're shooing them out of the office, suggest that they just really weren't willing to listen. They really weren't interested in in pursuing this. OK, counsel, I think you're over your time. Thank you very much for your arguments this morning. I think both counsel for their arguments this morning on this case, and it's submitted at this time.
judges: PAEZ, CLIFTON, THOMAS